UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of:

MEDITERRANEAN SHIPPING COMPANY
S.A.,

                Petitioner,

FOR AN ORDER TO TAKE DISCOVERY
FOR USE IN FOREIGN PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1782.

Case No. 1:25-mc-00598 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

This application arises under 28 U.S.C. § 1782 and concerns Petitioner Mediterranean Shipping Company S.A.'s ("MSC Argentina" or "Petitioner") request for an order compelling discovery from several financial institutions located in this District for use in a foreign criminal proceeding in Argentina. Dkt. 1 ("Appl." or the "Application"). Petitioner seeks records from Citibank, N.A. ("Citibank"), Popular Bank, N.A. ("Popular Bank"), and JPMorgan Chase Bank, N.A. ("JPMorgan") (together, "Respondents"), relating to alleged fraudulent transfers carried out by former employees of MSC Argentina.

Citibank and Popular Bank do not oppose the Application. Dkt. 21 ("Letter") at 1. JPMorgan does not oppose the Application in full but raises targeted objections concerning notice and the scope of the subpoena directed to it. Dkt. 17 ("Response" or "Resp.") at 1.

For the reasons that follow, the Court GRANTS the Application but modifies the scope of discovery as set forth below.

**BACKGROUND**

I.    **The Argentina Proceedings**

Petitioner MSC Argentina is a shipping company that provides transportation services to and from Argentina.  Dkt. 3-4 ("Zavalía Decl.") ¶ 5.  According to the Application and supporting materials, MSC Argentina uncovered a series of alleged fraudulent schemes perpetrated by certain current and former employees, including its former Chief Financial Officer, Martín Silman ("Silman").  *Id.* ¶¶ 4, 10.  These schemes allegedly involved the diversion of shipping commissions and the authorization of payments to third parties for services that were never performed.  *Id.* ¶ 10.  Those third-party beneficiaries included Eveston LLC, Velpasalt Global LLC, Three Tree International LCC, Casper Enterprises LTD, and Salford International LTD, among others.  Dkt. 3-5 ("Int'l Compl.") at 88.

In February 2025, MSC Argentina filed a criminal complaint with Argentina's National Criminal and Correctional Court of Appeals, initiating a criminal proceeding (the "Foreign Proceeding").  Zavalía Decl. ¶ 9.  The matter has been assigned to an investigating judge and delegated to a public prosecutor, consistent with Argentine criminal procedure.  *Id.* ¶¶ 7, 9.  MSC Argentina, as the alleged victim, is a party to the proceeding and may submit evidence to the court.  *Id.* ¶ 9; Appl. at 3.

Following the filing of the criminal complaint, MSC Argentina identified additional allegedly suspicious payments.  Specifically, Petitioner asserts that at least ninety-five payments between 2019 and 2023 — totaling more than $8 million — lack supporting documentation and do not correspond to legitimate business transactions.  Zavalía Decl. ¶ 14.  According to Petitioner, records held by U.S.-based financial institutions are necessary to trace these transfers and identify their ultimate beneficiaries.  *Id.* ¶¶ 16, 20.

## II.    Procedural History

Petitioner filed the Application on December 29, 2025, *ex parte*, seeking leave to serve subpoenas on Citibank, Popular Bank, and JPMorgan.  *See generally* Appl.  The requested discovery includes account records, transaction data, and know-your-customer materials associated with certain third-party beneficiaries.  Dkt. 3-1 ("Citibank Subpoena"); Dkt. 3-2 ("Popular Bank Subpoena"); Dkt. 3-3 ("JPMorgan Subpoena") (together, the "Proposed Subpoenas").  On January 5, 2026, the Court directed Petitioner to file a letter motion seeking leave to proceed *ex parte* if it believed there was a basis to do so, or to serve a copy of the Application and supporting materials on Respondents and on certain individuals identified as defendants in the Foreign Proceeding (the "Argentina Defendants") within five days of the Court's order in the absence of such a motion.  Dkt. 6 at 1.  On January 9, 2026, Petitioner informed the Court that it did not wish to proceed *ex parte* and sought leave to provide actual notice to the Argentina Defendants in lieu of service through the Hague Convention.  Dkt. 7 at 1, 3.  The Court granted Petitioner's request.  Dkt. 8 at 1.

On January 26, 2026, Petitioner submitted a letter documenting its service and notice efforts.  Dkt. 15.  Attached to that letter were affidavits confirming service of the Application on all Respondents.  Dkt. 15-1.  Also attached was the declaration of Francisco Zavalía ("Zavalía"), which recounted Petitioner's efforts to notify the Argentina Defendants of the Application.  Dkt. 15-2 ("Zavalía Serv. Decl.").

On February 17, 2026, JPMorgan filed a response to the Application, stating that it "generally takes no position" on whether the statutory and discretionary requirements of § 1782 are satisfied, but raising three concerns: (1) whether Argentine criminal authorities have been informed of the Proposed Subpoenas or would accept the requested discovery in the Foreign Proceeding; (2) whether adequate notice has been provided to the Argentina Defendants and

3

certain third parties; and (3) whether the JPMorgan Subpoena is overly broad and unduly burdensome.  Resp. at 1-2.  To remedy these concerns, JPMorgan asks the Court to deny the Application or, at minimum, to limit its scope.  *Id.* at 2.

On February 24, 2026, Petitioner submitted a reply disputing JPMorgan's objections.  *See* Dkt. 20 ("Reply").  In particular, Petitioner asserts that no requirement exists to notify Argentine authorities, that notice was provided to the Argentina Defendants, and that the JPMorgan Subpoena is appropriately tailored.  *See generally id.*

## LEGAL STANDARD

Section 1782(a) provides that a district court may order a person within a district to "produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).  Before granting a Section 1782 application, the Court must first determine whether the application satisfies Section 1782's three statutory requirements:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022) (alteration in original) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).  If the district court determines the statutory requirements are met, it may grant the application "in its discretion . . . 'in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  *Id.* (omission in original) (quoting *Mees*, 793 F.3d at 297-98).

To determine whether to grant the application, courts consider the four factors the Supreme Court identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

4

*See Fed. Republic of Nigeria*, 27 F.4th at 148.  These factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal" and "the receptivity of the foreign government or the court . . . to U.S. federal-court judicial assistance;" (3) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions;" and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264-65.  These factors are not exhaustive, and courts retain broad discretion to tailor discovery orders based on the case's particular circumstances.  *See Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017) ("Section 1782 leaves to the district courts' discretion both the decision to grant discovery and to 'prescribe the practice and procedure' for its production." (quoting 28 U.S.C. § 1782(a))).

**DISCUSSION**

## I.    Notice

As a threshold matter, JPMorgan argues that the Application should be denied or stayed because Petitioner has not demonstrated that it provided notice to the Argentina Defendants or to certain third parties.  Resp. at 7-9.  The Court disagrees.

First, JPMorgan asserts that "[d]espite the Court's orders on January 5, 2026 and January 12, 2026, MSC Argentina has not provided any indication that it has given actual notice of the Application to any Argentina Defendant." *Id.* at 9 (citations omitted).  That is incorrect.  In accordance with the Court's January 12, 2026 order, *see* Dkt. 8 at 1, Petitioner submitted Zavalía's declaration, which documented Petitioner's efforts to provide actual notice to the Argentina Defendants, *see generally* Zavalía Serv. Decl.  Specifically, Zavalía explained that for the Argentina Defendants with counsel, Petitioner provided two forms of notice: (1) by email — sending the Court's January 12 order, the Application, and related materials to counsel

in the Argentina proceeding, and (2) by a notary public who delivered the same documents on a USB drive with a cover letter to counsel's offices. Zavalía Serv. Decl. ¶¶ 7-9. For the Argentina Defendants without counsel, the notary personally visited their known addresses and provided notice via a cover letter and USB drive. *Id.* ¶¶ 8-9. Such efforts are sufficient to establish a likelihood of actual notice.[1] *See, e.g.*, *Tube City IMS, LLC v. Anza Cap. Partners, LLC*, No. 14-cv-01783 (PAE), 2014 WL 6361746, at *2 (S.D.N.Y. Nov. 14, 2014) (finding that leaving copy of subpoena at defendant's residence was "likely to provide [defendant] with actual timely notice," and that "emailing a copy of the subpoenas to [defendant]'s current attorney in another case . . . can only help assure that [defendant] is reached"); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-09116 (PGG), 2009 WL 1313259, at *3 (S.D.N.Y. May 11, 2009) (approving service of subpoena by certified mail, by leaving a copy with person of suitable age and discretion, and by serving counsel); *Beare v. Millington*, No. 07-cv-03391(ERK) (MDG), 2010 WL 234771, at *4 (E.D.N.Y. Jan. 13, 2010) (approving service of subpoena by certified mail and by affixing to door); *In re Sri Trang Gloves (Thailand) Pub. Co. Ltd.*, No. 25-mc-00325 (JAV), 2025 WL 2411137, at *3 (S.D.N.Y. Aug. 20, 2025) (directing petitioner to provide notice to the counsel of parties in the foreign litigation and directly to such parties if their counsel is unknown). Thus, Petitioner has met its notice obligations with respect to the Argentina Defendants.

Second, JPMorgan argues that the Application should be denied because Petitioner "has not notified Argentine authorities of its attempt to obtain U.S. evidence through this proceeding." Resp. at 8. In so arguing, JPMorgan does not point to any cases supporting such a notice

---

[1] JPMorgan makes no reference to Dkt. 15 and its associated exhibits, including Zavalía's declaration. *See generally* Resp. This omission suggests that JPMorgan was not aware of, or did not take into account, Petitioner's filing at the time it submitted its Response.

requirement.  To the contrary, Petitioner was under no obligation to provide notice to Argentine authorities.  *Cf. In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015) ("There is no requirement that the party seeking discovery pursuant to section 1782 must first request discovery from the foreign tribunal."); *accord In re Accent Delight Int'l Ltd.*, 869 F.3d at 134.  Thus, this argument is unavailing.

Third and finally, JPMorgan contends that Eveston LLC ("Eveston") — the subject of the JPMorgan Subpoena and one of the third-party beneficiaries of the allegedly fraudulent transactions, *see* JPMorgan Subpoena; Int'l Compl. at 88 — is entitled to notice before the Court renders its decision.  Resp. at 9.  But here, again, JPMorgan points to no statute or case standing for that proposition.  Pursuant to Section 1782, unless the court order authorizing discovery provides otherwise, "the document or other thing [shall be] produced, in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a).  Federal Rule of Civil Procedure ("Rule") 45(a)(4), in turn, provides that notice must be served on each party to an action before a subpoena commanding the production of documents is served on any third party.  *See* Fed. R. Civ. P. 45(a)(4).  In other words, "a party engaged in foreign litigation who serves a § 1782 subpoena *duces tecum* to obtain documents for use in the foreign litigation must first serve notice on all parties to the foreign proceedings."  *In re Hornbeam Corp.*, No. 14-mc-00424, 2015 WL 13647606, at *5 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018) (summary order); *accord In re Application of PT. Bank Woori Saudara Indonesia 1906, Tbk*, No. 25-mc-00523 (JPC) (GS), 2026 WL 472772, at *12 (S.D.N.Y. Feb. 17, 2026).  As discussed *supra*, Petitioner did so in accordance with the Court's January 12, 2026 order.  Zavalía Serv. Decl. ¶¶ 7-9.  Petitioner was under no additional obligation to provide notice to the beneficiaries of the Argentina Defendants' allegedly fraudulent transfers.

Having determined that there were no deficiencies with Petitioner's notice efforts, the Court next considers Section 1782's statutory requirements.

## II.    Statutory Requirements

Petitioner satisfies the statutory requirements of Section 1782. First, Respondents are located or found within this District. Br. at 5-6. As the Second Circuit has explained, "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re Del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019). Respondents take no position on this factor. Resp. at 1; Letter at 1. Nevertheless, the Court notes that, according to Petitioner, JPMorgan, Citibank, and Popular Bank each maintain a place of business in New York, Br. at 5-6, thereby satisfying the jurisdictional requirement, *see In re Tuohy*, No. 24-mc-00605 (GHW) (OTW), 2025 WL 1147574, at *3 (S.D.N.Y. Apr. 18, 2025) ("Petitioner has shown that the Banks are 'found' in this District within the meaning of Section 1782 because they all have offices and conduct extensive business in this District."); *In re Golden Meditech Holdings Ltd.*, No. 24-mc-00024 (DEH), 2024 WL 1349135, at *2 (S.D.N.Y. Mar. 29, 2024) (holding that banks alleged to be headquartered in this District were subject to general jurisdiction, satisfying Section 1782's first statutory requirement).

Second, the discovery is "for use" in a foreign proceeding. To satisfy the "for use" requirement, Petitioner must "show[] that the materials [Petitioner] seeks are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of" Petitioner's request for discovery. *Mees*, 793 F.3d at 301. "The term 'for use' is afforded a 'broad interpretation,' and the 'sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction.'" *In re B&C KB Holding GmbH*, No. 22-mc-00180 (LAK) (VF), 2023 WL 1777326, at *3 (S.D.N.Y. Feb. 6, 2023) (quoting *Deposit Ins. Agency v. Leontiev*, No. 17-mc-00414 (GBD) (SN), 2018 WL 3536083, at *3 (S.D.N.Y. July

23, 2018)), *objections overruled*, 2023 WL 4544775 (S.D.N.Y. June 8, 2023), *aff'd sub nom.*, *In re B&C Kb Holding GmbH*, No. 23-1014, 2024 WL 3170983 (2d Cir. June 26, 2024) (summary order); *accord Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). However, the applicant must show that "they are in a position to use the evidence they seek through their § 1782 application in those ongoing foreign proceedings." *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015). Here, the Foreign Proceeding is an ongoing criminal investigation overseen by an investigating judge in Argentina. Zavalía Decl. ¶¶ 7, 9. Petitioner, as a party to that proceeding, has the ability to submit evidence, *id.* ¶ 8, and the discovery sought will permit Petitioner to "trace the funds and the ultimate beneficiaries of the [allegedly fraudulent] payments" central to the investigation, Br. at 8. The Second Circuit has recognized that § 1782 applies to foreign criminal investigations of this nature. *See, e.g.*, *In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456, 462 (2d Cir. 2014) ("[W]e hold that 28 U.S.C. § 1782 permits district courts to order the production of discovery for use in a foreign criminal investigation being conducted by an investigating magistrate."); *see also* 28 U.S.C. § 1782(a) (defining "proceeding in a foreign or international tribunal" to include "criminal investigations conducted before formal accusation"). Petitioner has cleared the "for use" requirement's "low hurdle" by proving that the discovery it seeks is "*minimally* relevant to the [F]oreign [P]roceeding." *In re B&C Kb Holding GmbH*, 2024 WL 3170983, at *4 (quoting *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024)). The second statutory requirement is therefore satisfied.

Third, Petitioner qualifies as an "interested person." As the alleged victim and a participant in the Foreign Proceeding, Br. at 8, MSC Argentina plainly meets this requirement, *see, e.g.*, *In re Tuohy*, 2025 WL 1147574, at *3 ("Petitioner is a party to the foreign proceeding,

9

and thus is an 'interested person' under Section 1782"); *Intel Corp.*, 542 U.S. at 256 (finding that "[t]he complainant who triggers a[n] . . . investigation" is an "interested person"); *In re Vinmar Overseas, Ltd.*, No. 20-mc-00277 (RA), 2020 WL 4676652, at *2 (S.D.N.Y. Aug. 12, 2020) ("Courts have construed the term 'interested party' to include not just parties to foreign proceedings, but also complainants who trigger foreign investigations and those who possess participation rights in such investigations."). Accordingly, Petitioner has satisfied the statutory prerequisites for obtaining discovery in aid of a foreign proceeding.

## III.    Discretionary Factors

The Court next considers the *Intel* factors and finds that they weigh in favor of granting the Application.

The first factor, the respondent's participation in the foreign proceeding, favors granting the Application. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel Corp.*, 542 U.S. at 264. Respondents are not participants in the Foreign Proceeding, and the evidence sought is located in the United States. Br. at 9. Thus, the first *Intel* factor supports granting the Application.

The second factor, receptivity of the foreign tribunal, does not weigh against the Application. JPMorgan argues that the Application should be denied because Petitioner "has not provided confirmation from Argentine authorities that they will admit evidence obtained through the Application." Resp. at 8. Petitioner responds that no such showing is required and that Argentine courts are generally receptive to evidence obtained through § 1782. Reply at 5-6. Petitioner is correct. Rather than require an affirmative showing that the foreign tribunal will *accept* the evidence sought, "[t]he Second Circuit has instructed district courts to 'consider only

10

authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782.'" *In re DNG FZE*, No. 23-mc-00435 (PAE), 2024 WL 124694, at *4 (S.D.N.Y. Jan. 11, 2024) (emphasis added) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).  Such proof may include "a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *In re Martinez*, No. 24-mc-00306 (RA) (SN), 2024 WL 5402058, at *6 (S.D.N.Y. Nov. 1, 2024) (citation omitted), *report and recommendation adopted*, 2025 WL 2505471 (S.D.N.Y. Sept. 2, 2025).  "Absent specific directions to the contrary from a foreign forum, [Section 1782]'s underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa*, 51 F.3d at 1102.  Relevant here, "there is no statute or case law indicating that Argentinean courts would be opposed to assistance from a United States federal court." *In re Application of Habib*, No. 24-mc-23740, 2024 WL 4692161, at *3 (S.D. Fla. Nov. 6, 2024).  Indeed, Petitioner, though Zavalía's declaration, has affirmed that the foreign tribunal will be receptive to MSC Argentina's requested discovery.  Zavalía Decl. ¶ 21 ("In my experience, the Argentine Court will be receptive to this evidence and . . . [t]his evidence will be admissible before the Argentine Court."); *see also In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. 2020) (finding that applicant "ha[d] made a showing that the [foreign tribunal] would be receptive to evidence obtained through the [a]pplication" by submitting declaration from foreign counsel).  The second *Intel* factor accordingly favors granting the Application.

The third factor, whether the application is an attempt to circumvent foreign restrictions, also supports granting the Application.  There is no indication in the record that the requested discovery would be improper under Argentine law or that Petitioner is acting in bad faith.  Rather, Petitioner appears to be attempting to obtain "relevant information that the [foreign]

11

tribunal[ ] may find useful but, for reasons having no bearing on international comity, . . . cannot obtain under [its] own laws." *Intel Corp.*, 542 U.S. at 262. JPMorgan does not contest this third factor. *See generally* Resp. Accordingly, the third *Intel* factor supports granting the Application.

The fourth factor, undue burden, requires closer consideration. This factor is measured by the standards of Rule 26, which "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associacão dos Profissionais dos Correios v. Bank of N.Y. Melon Corp.*, No. 22-mc-00132 (RA) (KHP), 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022), *remanded on other grounds sub nom.*, *Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 28, 2023); *see also* Fed. R. Civ. P. 26(b). The "proportionality analysis depends upon the relevance of the information sought — and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017) (summary order).

The Proposed Subpoenas seek "[a]ny and all" documents and communications relating to various third-party payment beneficiaries over a multi-year period. Citibank Subpoena at 6; Popular Bank Subpoena at 6; JPMorgan Subpoena at 6. With respect to the JPMorgan Subpoena, which is materially the same as those served on Citibank and Popular Bank, JPMorgan argues that Petitioner's request is overbroad, unduly burdensome, and disproportionate to the needs of the case, particularly given that the record identifies only a limited number of transactions involving JPMorgan. Resp. at 10-13. Petitioner responds that the requests are appropriately tailored to trace the flow of funds and identify beneficiaries of the alleged fraudulent scheme. Reply at 6-7. The Court agrees with JPMorgan that the breadth of the requested materials — both in temporal scope and subject matter — exceeds what is reasonably necessary at this stage. In particular, the request for all documents relating to these

third-party beneficiaries over an extended time period is not proportional to the limited nexus between Respondents and the alleged transactions reflected in the record.  This is the case for all of the Proposed Subpoenas.  The Court therefore finds it appropriate to narrow the Proposed Subpoenas.  *See, e.g.*, *In re Tel. Media Grp. Ltd.*, No. 23-mc-00215 (JGLC), 2023 WL 5770115, at *11 (S.D.N.Y. Sept. 6, 2023) (observing that "[t]he fourth *Intel* Factor permits the Court to . . . limit the scope of[] discovery when faced with unduly intrusive or burdensome requests" and narrowing subpoenas accordingly (internal quotation marks and citation omitted)).

Accordingly, the Proposed Subpoenas shall be limited to:

(1)    a reasonable temporal window — January 1, 2019, through December 31, 2023 — that is tied to the specific transactions identified in Petitioner's submissions, which took place "between 2019 and 2023," Zavalía Decl. ¶ 14;

(2)    the following categories of information:

a.    a list of the accounts in the Payment beneficiaries' name, as defined in each of the Proposed Subpoenas;

b.    documents sufficient to show transactions involving the Payment beneficiaries' accounts and either MSC Argentina or any Argentina Defendant, including the amounts, dates, originating accounts, beneficial owners of the originating accounts (if known), intermediary banks (if any), receiving accounts, beneficial owners of the receiving accounts (if known), purpose (if known), special instructions (if any), parties receiving notice (if known), and parties that approved or authorized the transactions (if known); and

c.    account opening documents, identity verification documents, account closing documents, due diligence documents, and know-your-client

documents for any account in the Payment beneficiaries' name that

shared transactions with either MSC Argentina or any Argentina

Defendant.

The foregoing measures resolve any concerns of overbreadth such that the fourth *Intel* factor

likewise weighs in favor of granting the Application.[2]

## CONCLUSION

In sum, because the statutory factors are met and the four *Intel* factors weigh in

Petitioner's favor, the Court exercises its discretion to grant the Application in part.  The

Application is GRANTED, subject to the limitations described above.

The Clerk of Court is respectfully directed to CLOSE this case.

Dated:  May 7, 2026
        New York, New York

                                        SO ORDERED.

                                        _____
                                        JENNIFER L. ROCHON
                                        United States District Judge

---

[2] In its Response, JPMorgan also seeks a "protective order governing the confidentiality and use of documents produced in response to the [JPMorgan] Subpoena."  Resp. at 2.  It is true that "[i]f there is an identifiable and avoidable risk that evidence sought in a section 1782 application may be used for improper purposes, a district court may enter a protective order to limit its use."  *In re Arida, LLC*, No. 19-mc-00522 (PKC), 2020 WL 7496355, at *7 (S.D.N.Y. Dec. 21, 2020).  However, JPMorgan has not identified such a risk here.  And financial documents of this kind do not pose any inherent risk that would warrant issuance of a protective order absent a specific showing by the party resisting discovery.  *See, e.g.*, *In re Maksoud*, No. 25-cv-04188 (AKH), 2025 WL 2444130, at *2 (S.D.N.Y. Aug. 25, 2025) (granting production of bank records pursuant to § 1782 absent protective order); *In re JSC BTA Bank*, 577 F. Supp. 3d 262, 268 (S.D.N.Y. 2021) (same); *In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. De C.V.*, No. 25-mc-00435 (JPO) (RFT), 2026 WL 770360, at *8 (S.D.N.Y. Feb. 9, 2026), *report and recommendation adopted sub nom.*, *In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V.*, 2026 WL 768850 (S.D.N.Y. Mar. 18, 2026) (same).  The Court therefore declines to enter a protective order at this stage.  The parties are, of course, welcome to meet and confer regarding a proposed protective order if such risks are identified.

14